# UNITED STATES DISTRICT COURT
for the
District of Delaware ~~REDACTED~~

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Information associated with Google ID 760221658247
that is stored at a premises controlled by Google, Inc.

Case No. 20- 196 M

SEALED

UNSEALED
10/22/20
JSTL

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

FILED

OCT 22 2020

U.S. DISTRICT COURT DISTRICT OF DELAWARE

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1030(a)(2) | Exceeding Authorized Access of a Protected Computer |
| 42 U.S.C. 1320d-6(a)(2) | Obtaining Individually Identifiable Health Information Relating to an Individual |

The application is based on these facts:
See affidavit and attachments in support of search warrant.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under* 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Garrett Kerley*
*Applicant's signature*

**Garrett Kerley, Special Agent, DEA**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:    08/07/2020

*Judge's signature*

City and state:    Wilmington, Delaware    Honorable Mary Pat Thynge, Chief U.S. Magistrate Judge
*Printed name and title*

| Print | Save As... | Attach | Reset |
|---|---|---|---|

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE
SEARCH OF INFORMATION
ASSOCIATED WITH GOOGLE ID
760221658247 THAT IS STORED
AT PREMISES CONTROLLED
BY GOOGLE, INC.

No. 20 - 196M

UNDER SEAL

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Garret Kerley, a Special Agent with the Federal Bureau of Investigation ("FBI"), Baltimore Division, Wilmington, Delaware, being duly sworn, depose and state as follows:

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Google, Inc., a remote computing service provider headquartered at 1600 Amphitheatre Pkwy, Mountain View, CA 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the account ID 760221658247, specifically the contents of Google Drive.

2.     Google ID 760221658247 is registered to Weih "Steve" CHANG, a former employee of a national healthcare provider, the Victim Corporation. In violation of the

1

Victim Corporation's information security policies, CHANG copied files containing sensitive information to at least two unapproved personal storage devices. Forensic examination of the storage devices indicated that files stored on the unapproved devices were also once stored on a Google Drive. The paragraphs below establish that CHANG was in ownership of and used a Google Drive account to store files which likely contain protected health information and were improperly downloaded from the Victim Corporation's server.

<u>TRAINING AND EXPERIENCE</u>

3.    I have been a Special Agent with the FBI since March 9, 2003. As part of my duties, I investigate violations of federal law, including Health Care Fraud, Complex Financial Crimes, and Public Corruption. I have gained expertise in the conduct of such investigations through training in seminars, classes, and everyday work related to conducting these types of investigations.

4.    As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. I previously participated in the execution of numerous search warrants and arrest warrants and have previously prepared numerous search warrant affidavits.

5.    Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that contained within the Google Drive is evidence, instrumentalities, contraband or fruits of crime, further described in Attachment B, pertaining to violations of Title 18, United States Code, § 1030(a)(2) (Obtaining Information from a Protected Computer by Exceeding Authorized Access)

2

and Title 42, United States Code, § 1320d-6(a)(2) (Obtaining Individually Identifiable Health Information Relating to an Individual).

6.      Unless otherwise stated, all information contained in this affidavit is either personally known to me through my investigation or is information that has been provided to me by the Victim Corporation. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the below offenses are presently located in the Google Drive.

## JURISDICTION

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *See* 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## RELEVANT CRIMINAL STATUTES

8.      Title 18, United States Code, § 1030(a)(2) ("TARGET OFFENSE 1") provides in relevant part that:

> (a) whoever—
> (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—
> (C) information from any protected computer,
>
> is guilty of a felony offense.

3

9.     A "protected computer" is defined at 18 U.S.C. § 1030(e)(2)(B) as a computer "which is used in or affecting interstate or foreign commerce or communication …".

10.     The definition of "computer" at 18 U.S.C. § 1030(e)(1) is broad and has included servers and online accounts. *See, e.g., Sell It Social, LLC v. Strauss*, No. 15 Civ. 970 (PKC), 2018 WL 2357261, at *2 (S.D.N.Y. Mar. 8, 2018) (server); *Hill v. Lynn*, No. 17 C 06318, 2018 WL 2933636, at *3 (N.D. Ill. June 12, 2018) (internet account).

11.     Title 42, United States Code § 1320d-6(a)(2) ("TARGET OFFENSE 2, and collectively the "TARGET OFFENSES"), states in relevant part that "(a) a person who knowingly and in violation of this part—(2) obtains individually identifiable health information relating to an individual" is guilty of a federal offense.  That section also provides that "a person (including an employee or other individual) shall be considered to have obtained … individually identifiable health information in violation of this part if the information is maintained by a covered entity … and the individual obtained or disclosed such information without authorization."  I am aware upon information and belief that the Victim Corporation is a "covered entity" within the meaning of 42 U.S.C. § 1320d-6(a).

<u>TECHNICAL BACKGROUND</u>

12.     Directory: A directory is an organizational storage system within a computer.  User-facing examples of directories include the Documents and Downloads folders inherent on most computer systems, and any sub-folders within those.  Many users name and organize directories based on their contents for ease of access.

13.     Path: A path indicates the location of a file from its root location, such as

4

within a hard drive of a computer. Components of a path, such as directories, are separated by a forward or backslash ("/" or "\") depending on the operating system of the computer. When the path indicates that a particular file has been accessed, that file is typically the last component of a path. For instance a file called "Document1.docx" located in the "Documents" folder belonging to "User 1" of a number of "Users" located on a hard drive ("C:") can be described by the following path: C:/Users/User1/Documents/Document1.docx. A path can be absolute or relative. An absolute path contains a full listing of every folder or directory which must be accessed to go from the hard drive to a particular file. A relative path contains only a portion of the listing, such that a computer cannot reliably locate a particular file without more information. A path is created or modified whenever the location of a file or directory within the file system is created or modified.

14.    IP Address: An Internet Protocol address (or "IP address") is a unique numeric address used to identify computers on the Internet. The standard format for an IP address consists of four sets of numbers between 0 and 255 separated by dots, e.g., 149.101.10.40. Every computer connected to the Internet (or group of computers using the same account to access the Internet) must be assigned an IP address so that Internet traffic, sent from and directed to that computer, is directed properly from its source to its destination. Internet Service Providers (ISPs) assign IP addresses to their customers' computers. The location of IP addresses can be traced.

15.    Computer Network: interconnected computers within a limited area such as a residence, school, laboratory, university campus or office building. A local network

5

is a group of computers sharing the same internet connection.

16.     Computer Logs (or, as mentioned below, an "Absolute log"): A log created by a computer or computer software that provides the location of the device when it is connected to the Internet, a record of any changes to the systems operating on the computer, and/or records of any devices plugged into the computer.

17.     Geolocation: The location of a computer.  The process of identifying a computer's geolocation is accomplished through three methods: IP addresses from the computer's geographical location, Internet data from Google, Inc. when connected to a wireless internet, and location data about the laptop created by the Windows operating system.

18.     Virtual Private Network (VPN): A virtual private network (VPN) extends a private network across a public network, and enables users to send and receive data across shared or public networks as if their computing devices were directly connected to the private network.  Applications running across the VPN may therefore benefit from the functionality, security, and management of the private network. VPNs may allow employees to securely access a corporate intranet while located outside the office. A VPN can also limit an employee's access to downloading or sharing specific file types. A VPN is created by establishing a virtual point-to-point connection through the use of dedicated connections, virtual tunneling protocols, or traffic encryption. A VPN available from the public Internet can provide some of the benefits of a wide area network (WAN). From a user perspective, the resources available within the private network can be accessed remotely.  A visual depiction of a VPN is as follows:

6



19.    Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## INTRODUCTION

20.    As explained more fully below, on or about November 18, 2019, the Victim Corporation, a national healthcare provider headquartered in ▆▆▆▆▆▆▆, alerted the FBI to the potential misuse and theft of personal identifying information of member doctors and protected patient health information by employee Weih (Steve) CHANG.

7

21.      CHANG was employed by the Victim Corporation as a data analyst working on Healthcare Effectiveness Data and Information Set ("HEDIS") information, which is information provided to regulators regarding services provided to specific classes of patients. CHANG's position with the Victim Corporation was a telework position, requiring CHANG to work from his residence. As part of CHANG's duties, CHANG was responsible for using a laptop computer owned by the Victim Corporation and issued to CHANG to pull HEDIS information from the Victim Corporation's servers, located in ███████████████, and transmit relevant data to various state regulatory agencies.

22.      In or around November 2019, the Victim Corporation realized that there was reason to believe that CHANG had tampered with his work-issued laptop computer in contravention of corporate policy. After an analysis of CHANG's work-issued laptop in or around mid-November 2019, the Victim Corporation's computer technical experts were able to piece together logs from the laptop and other information to learn that CHANG had inappropriately copied the personal identifying information and personal health information of tens of thousands of member doctors and patients onto devices owned, operated, and controlled by CHANG, in contravention of the Victim Corporation's security measures and policies.

23.      On or about November 15, 2019, CHANG admitted to at least one of the Victim Corporation's employees that he obtained the information but refused to return the data. CHANG also refused to allow the Victim Corporation or a neutral third party to meet with him to ensure the proper destruction of the data. At that point,

the Victim Corporation alerted the FBI.

24.     I obtained a search warrant (No. 19-285), signed by the Honorable Chief Magistrate Judge Mary Pat Thynge on November 26, 2019, to search CHANG's residence for evidence of the TARGET OFFENSES. The FBI executed the warrant on November 27, 2019, and found numerous personal electronic devices. At least two of the personal devices contained files from the HEDIS database belonging to the Victim Corporation. Of these files, some appear to have been stored on a Google Drive account belonging to CHANG.

PROBABLE CAUSE

*Background*

25.     CHANG began working at the Victim Corporation as a Data Analyst beginning in or around November 2016.

26.     On or about August 8, 2019, corporate inventory records from the Victim Corporation reflect that CHANG was issued a brand new HP Elitebook 840 G6 corporate laptop bearing Asset Tag 95030 from the Victim Corporation's headquarters in ███████████ ("CHANG's work laptop"). The following screen shot from the Victim Corporation's inventory asset management application reflects the granting of CHANG's work laptop for purposes of CHANG performing his official telework duties for the Victim Corporation.

9



27.    Each laptop provided by the Victim Corporation to its employees contains software developed by Absolute Software Co. ("Absolute"). The Absolute software allows the Victim Corporation both to monitor the location of and record logs reflecting changes made to each laptop (the "Absolute logs"). The Absolute software is installed outside of the computer's hard drive and operating system so that it cannot be tampered with, by, for example, removing the computer's hard drive. Each laptop provided by the Victim Corporation is also password protected so that only the authorized employee (in this case, CHANG) can utilize the laptop provided by the Victim Corporation.

28.    The Absolute logs for CHANG's work laptop reflect that the laptop was first utilized by CHANG outside the Victim Corporation's premises on or about August 10, 2019 at 8:45 PM.

29.    The Absolute logs also show that the laptop was accessed at that time in the proximity of ███████████████████████████, based on geolocation identification information for the laptop. According to HR Personnel records, CHANG's registered home address with the Victim Corporation is ████████████████,
████████████.

10

## CHANG's Work Laptop is Modified

30.    According to Absolute log records, on or about August 11, 2019, the user of CHANG's work laptop renamed the computer. Technical experts from the Victim Corporation have explained to me that the computer could only be renamed if a new operating system had been installed on the computer. Because of restrictions that the Victim Corporation's information security requires on all of the corporation's laptops, a new operating system could only be installed if the original hard drive assigned to the computer was removed and a different hard drive was installed in its place.[1]

31.    Additional Absolute logs associated with the laptop confirmed that the computer had been modified. Absolute logs from on or about August 11, 2019, showed that the computer had been renamed and the operating system was changed from Windows 10 Enterprise to Windows 10 Professional. Additionally, the hard drive was replaced –instead of the original Toshiba 256 gb hard drive (Drive 1), a 128 gb hard drive of an unknown brand bearing serial number 0025-38B9-71B9-C8F6 (Drive 2) was detected in the computer on or about August 13, 2019. Drive 2 is an unapproved device not sanctioned by the Victim Corporation or its information security department.

32.    According to representatives from the Victim Corporation, CHANG never requested permission to remove and replace Drive 1. Such activity is a direct violation of the teleworker agreement signed by CHANG on or about November 1, 2016 and Associate Guidebook policies attested to by CHANG annually, most recently on or

---

[1] Changing the hard drive and operating system do not affect the serial number or Asset Tag of the laptop, allowing the Victim Corporation's technical experts to continue monitoring the location of the laptop and any changes being made to it.

11

about October 21, 2019.[2]

33.     The log data showed that CHANG's work laptop was still in the proximity

---

[2] CHANG attested to the following relevant policies in the teleworker agreement:

"I understand and agree that I have a higher responsibility to maintain and protect the confidentiality of Company information and member information because of my teleworking status. I further agree to abide by the company's Information Security Policy. I commit specifically to keeping my computer safe, private and password protected at all times."

"I understand that my workspace should be an area that is private and without risk of breach of confidentiality. This should include three levels of security as defined by the IS Security Policy. I understand that the workspace should include lockable storage for protection of Protected Health Information (PHI) as well as other confidential company information and materials."

"I agree to take all reasonable precautions to protect Company-provided equipment and/or furniture from loss, theft, damage, or misuse. In the event of loss, theft, damage, or misuse of Company-provided equipment and/or furniture, I agree to file a police report, and immediately notify my department management and the Teleworking Coordinator."

"I understand that Company work should be performed through remote accessing the company server (via VPN, Citrix, etc.) and at no time should work be performed, saved and/or stored locally to any non-Company provided computer."

CHANG also attested to the Information Security policy, including the following provision:

"Associates in possession of [corporate] laptop computers or other portable devices shall adequately protect the device from theft and/or unauthorized access.

Personal equipment is not allowed to connect to the [corporate] computing network (or be used to store company confidential, proprietary, and/or protected information and data) without prior approval from the Information Security department.

This policy outlines protocols to prevent or mitigate the risk of laptop or portable device theft and protect mobile copies of any [corporate] data from the unauthorized access, use, disclosure, modification, and/or destruction of confidential information, including PHI. All portable data storage devices must have approved encryption software installed before any [corporate] data is stored or accessed on the device. Accepted software and encryption mechanisms are available from the [Corporation's] Information Security department."

of ████████████████████████████ at the time Drive 1 was removed and replaced with Drive 2.

### Third Hard Drive Installed into CHANG's work laptop

34.     The logs also show that Drive 2 remained in the laptop between on or about August 13, 2019 and on or about August 28, 2019.  Absolute logs indicated that, on or about August 28, 2019, a third hard drive, a Samsung 256gb hard drive ("Drive 3") was installed on CHANG's work laptop, where it remained until the logs stopped reporting on or about November 6, 2019.  Like Drive 2, Drive 3 was an unapproved device and there is probable cause to believe that its installation into CHANG's work laptop was a knowing violation of the Victim Corporation's policies by CHANG.

### Installation of Portable Storage Devices into CHANG's Work Laptop

35.     Drives 2 and 3 are hard drives capable of storing and indexing large amounts of data.

36.     Security protocols existing on CHANG's work laptop while Drive 1 and the original Windows 10 Enterprise operating system were installed on the laptop prevented a user from transferring any data onto an unapproved personal storage device. Such security protocols would also prevent a user from transferring data onto a web-based storage platform such as Google Drive. However, after Drive 1 was removed and the operating system was changed, the Victim Corporation's security measures could no longer prevent data from being transferred onto unapproved personal storage devices.

### Unauthorized and Protected Data Is Transferred to Drives 2 and 3

37.     On or about August 13, 2019, the Absolute logs reflect that the user of

13

CHANG's work laptop transferred a file named "HEDIS – Board Certification Rates 5 3 2019" onto Drive 2 after Drive 2 was installed into CHANG's work laptop. That file exists on the Victim Corporation's network and contains the personal identifying and qualification information for 31,971 Victim Corporation member doctors. That information includes Social Security Numbers ("SSNs"), Dates of Birth ("DOBs"), personal addresses, National Provider Identifier ("NPI") numbers, and other information about doctors practicing in at least the following states: Delaware, Michigan, Louisiana, and South Carolina. Such information is highly protected information regulated by each state.

38.    On or about October 19, 2019, the Absolute logs reflect that the user of CHANG's work laptop then transferred the "HEDIS – Board Certification Rates 5 3 2019" file onto Drive 3 after Drive 3 was installed into CHANG's work laptop. The logs also show that CHANG's laptop transferred four additional files to Drive 3: (1) "PA Health Centers Lab Data - 100"; (2) "Beacon PsychCare Claims Layout"; (3) "Supplemental Data Unity EHR Data ReformatV2"; and (4) "DC Blood LEAD lab data." A review of those files on the Victim Corporation's network showed that they contained the personal health information of 4,662 patients, including SSNs, DOBs, behavioral health data and diagnoses from at least Pennsylvania, Louisiana, Florida, and the District of Columbia.

39.    The Victim Corporation's network logs reflect that CHANG's user ID "wc07377" accessed and downloaded the above-enumerated files containing highly restricted protected health information and personal identifying information on an unknown date prior to October 19, 2019. User ID "wc07377" was assigned only to

14

CHANG by the Victim Corporation and was a password-protected User ID to ensure that no other person had access to that User ID except CHANG.

40.     Each of the aforementioned transfers of personal identifying information and personal health information onto Drives 2 and 3 occurred while unapproved storage devices were installed in CHANG's work laptop.

*Victim Corporation First Realizes an Issue with CHANG's Work Laptop*

41.     On or about November 4, 2019, technical experts from the Victim Corporation first realized that CHANG's computer had been modified with a new, unauthorized hard drive by means of the Victim Corporation's remote monitoring system.

42.     On or about November 5, 2019, high ranking employees from the Victim Corporation's Human Resources and Security (including Information Security) Departments spoke with CHANG telephonically to inquire why he had modified his work laptop.  CHANG stated that his work laptop was not working so he purchased a hard drive on EBay and attached it via a "Thunderbolt" (sometimes also known as a "USB-C") connection to the laptop in an effort to get it to work again.  The Victim Corporation's information security personnel knew that CHANG's statement was false because the laptop does not have a Thunderbolt or USB-C connection.  After that conversation, the Victim Corporation's personnel immediately disabled CHANG's access to the corporation's servers and network.

43.     On or about November 6, 2019, Victim Corporation security personnel called CHANG and instructed him to bring his work laptop and other devices (for

15

example a keyboard and external monitor) loaned to CHANG back to the Victim Corporation's headquarters.

44.    On or about November 8, 2019, CHANG arrived at the Victim Corporation's headquarters and informed the security guard that he did not have his personnel pass, but certified that he was an employee of the Victim Corporation and was trying to get into his office. As a telework employee, CHANG does not have an office in the building. The security guard alerted the Chief Security Officer ("CSO") of the Victim Corporation that CHANG was on the premises. The CSO then met CHANG at the entrance and collected CHANG's work laptop.

### Victim Corporation First Realizes a Data Breach Occurred

45.    On or about November 13, 2019, the Victim Corporation realized that CHANG had returned his work laptop with the original Toshiba 256gb hard drive (Drive 1) installed. CHANG did not provide Drives 2 or 3.  They further realized that CHANG had rendered or caused his work laptop to be rendered completely inoperable. However, the technical experts at the Victim Corporation were able to review all of the log data on the laptop; the data showed that sensitive information had been transferred onto at least two unauthorized hard drives, Drive 2 and Drive 3. The Victim Corporation's technical experts could not determine whether that information was then further moved to any of the six removable USB flash drives, or any other storage device.

### Subsequent Interview of CHANG

46.    A telephonic interview of CHANG occurred on or about November 15, 2019 by a Human Resources representative from the Victim Corporation, who

16

requested that CHANG return the hard drives that the Victim Corporation knew contained sensitive information. CHANG admitted to having the sensitive information in his possession but said that he was not going to do anything with it. He refused to come into the Victim Corporation to return the information and instead said he was resigning from his position.

47.     Another representative from the Victim Corporation called CHANG in the evening hours of on or about November 15, 2019 to attempt to negotiate a meeting at a neutral location for purposes of confirming that the sensitive information would be deleted from all storage devices possessed by CHANG. At that point CHANG became hostile with the representative, stating that he would not agree to a meeting, and said something to the effect of "feel free to get law enforcement involved."

48.     The Victim Corporation thereafter reported the unauthorized transfer of its data to the FBI and subsequently terminated CHANG as an employee.

*FBI Investigation*

49.     On or about November 27, 2019, FBI executed a search warrant at CHANG's residence. Seized from the residence were approximately 42 items of what appeared to be personal electronics and related devices including CDs, cell phones, laptops, tablets, thumb drives, towers, and internal and external hard drives not associated with the Victim Corporation.

50.     On or about January 30, 2020, FBI met with the Victim Corporation to address whether certain items, including two portable hard drives, one "My Passport for Mac" device and one "My Passport" device, seized from CHANG's residence,

17

belonged to the Victim Corporation or contained material belonging to the Victim Corporation. The Victim Corporation confirmed that, while the portable hard drives contained information belonging to it, the portable hard drives did not belong to and were not authorized for use by the Victim Corporation. The Victim Corporation's Information Security policy prohibited the storage of its data on unapproved devices and servers, including Google Drive, a service provided by Google.

51.     A "My Passport for Mac" device is typically only compatible with a Macintosh operating system.[3] CHANG's work laptop utilized a Windows operating system. Generally, a file or folder can only be shared across computers with different operating systems by email, an external storage device such as a portable hard drive, or an internet-based storage system such as a Google Drive.

52.     Forensic examination of the personal hard drives found at CHANG's residence revealed paths that implicated files containing sensitive information belonging to the Victim Corporation and stored on a Google Drive account, such as the following paths:



My Passport for Mac [HFS+]/My Passport for MAC/ScanDisk

---

[3] A "My Passport for Mac" drive contains an HFS+J partition so that the drive is compatible with a Mac operating system. The external hard drive may be used with a Windows computer after the HFS+ partition is reformatted to a different partition. *See* My Passport™ for Mac Portable Hard Drive User Manual, Western Digital, https://documents.westerndigital.com/content/dam/doc-library/en_us/assets/public/wd/product/external-storage/my_passport/my-passport-for-mac-2015/user-manual-my-passport-for-mac-2015.pdf (last accessed July 21, 2020). That the [HFS+] remains in the root directory suggests that CHANG did not reformat the portable hard drive for use with a Windows computer and stored information to the portable hard drive while using a Mac computer.



53.    The Victim Corporation informed me that portions of the paths listed in paragraph 52 above belonged to it. The Victim Corporation confirmed that the directory entitled "ACFC" present in each of the paths reproduced in paragraph 52 above corresponded with one of its shared network drives. The Victim Corporation further certified that the names of employees who worked with CHANG on the HEDIS dataset corresponded with the names listed in the above paths, such as "▮▮▮▮▮▮▮▮" and "▮▮▮▮▮" and that the file names present in the paths corresponded to folders located on CHANG's coworkers' network drives.

54.    For instance, the Victim Corporation verified that the second path listed in paragraph 52 above belonged to it after searching its network drives to find a corresponding path, as indicated in the screenshot below. The "CDPS" prefix on most of the files in the folder listed in the path depicted below may refer to the Chronic Illness and Disability Payment System, a diagnostic classification system employed by some Medicaid programs to inform payment decisions.

19

| Name | Date modified | Type | Size |
|---|---|---|---|
| _cdps01.sas | 6/20/2014 7:57 AM | SAS File | 1 KB |
| _cdpsfmt1.adult | 6/20/2014 7:57 AM | ADULT File | 1 KB |
| _cdpsfmt1.child | 6/20/2014 7:57 AM | CHILD File | 1 KB |
| _cdpsfmt2.adult | 6/20/2014 7:57 AM | ADULT File | 1 KB |
| _cdpsfmt2.child | 6/20/2014 7:57 AM | CHILD File | 1 KB |
| _cdpslb | 6/20/2014 7:57 AM | _CDPSLB File | 1 KB |
| _cdpsname.adult | 6/20/2014 7:57 AM | ADULT File | 1 KB |
| _cdpsname.child | 6/20/2014 7:57 AM | CHILD File | 1 KB |
| _cdpsprlst | 6/20/2014 7:57 AM | _CDPSPRLST File | 1 KB |
| _cintvars | 6/20/2014 7:57 AM | _CINTVARS File | 1 KB |

55.     The Victim Corporation also certified that the directories listed closer to the root directory than the ACFC, such as "Google Drive" and "DT605_20180823" were not controlled by the Victim Corporation.

56.     Based on my training and experience, a computer user will name their files and folders in a manner that is most convenient for their use, often describing the contents of the folder for ease of access and organization. When files and folders are downloaded from the Internet, they typically retain the name of the file or folder assigned by the service or user that created the file or folder, unless changed by the user. Where the name of a file or folder is not overly generic and subject to multiple different interpretations, a file name may be sufficiently detailed to permit a reasonable inference of what the file or folder contains.[4]

57.     Moving from the ACFC directory controlled by the Victim Corporation toward the root directory on the portable hard drive found at CHANG's residence shows

---

[4] At least one court has also agreed with this conclusion. *See United States v. Miknevich*, 638 F.3d 178, 185 (3d Cir. 2011).

that the files were located within a directory entitled "Google Drive" or "Google Drive Backup" which was on a directory called "ScanDisk Data," which in turn was located on a directory called "My Passport for Mac" which was located on the portable hard drive. "ScanDisk" may refer to Microsoft ScanDisk, a diagnostic utility program included in computers operating on the Windows Millennium Operating Systems that repairs file systems errors on a hard drive. CHANG's work laptop, even when modified did not use a Windows Millennium operating system. If ScanDisk does in fact refer to this Windows program, then another computer, in addition to CHANG's work laptop and the Macintosh computer used with the portable hard drive, was once used to store the information found on the portable hard drive "My Passport for Mac."

58.    That the names of the files and folders downloaded from the Victim Corporation were not modified to mask their contents suggests that a more innocuous folder name such as "Google Drive" would also not be modified.

59.    Following discovery of the paths implicating a Google Drive, the government sent a subpoena to Google, Inc. to determine whether CHANG was in control of a Google Drive account.

60.    Google, Inc. requires that users create a unique username and password to use a Google Drive account. Google Drive allows users to create, store, edit, and share files, including, through a suite of productivity apps (Docs, Sheets, and Slides), documents, spreadsheets, and presentations. Google Drive may also contain data used and produced through third-party applications, including but not limited to Microsoft Word, Microsoft Excel, Adobe Acrobat, or similar, and a user need not be the creator of

21

a file in order to save it to a Google Drive. All file types that can be stored on one user's Google Drive may be shared with another user. Files from a Google Drive user cannot be made to appear on another user's Google Drive unless the file has been shared. Files on Google Drive remain on Google servers indefinitely unless deleted by the user, and even then, files remain on the servers for a period of time following deletion.

61.     In general, providers like Google ask each of their subscribers to provide certain personal identifying information when registering for an account.  This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit card or bank account number).  Providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account.  In addition, providers often have records of the IP addresses used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

62.     In some cases, account users will communicate directly with a provider such as Google about issues relating to their account, such as technical problems,

billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

63.     In response to the subpoena, Google, Inc. certified that CHANG had an active Google Account that utilized the Google Drive functionality, with the Google ID 760221658247. The account was created February 28, 2006, with Google email ███████████████████ and with alternate email ██████████████████████.

64.     Each of the paths listed in paragraph 52 above and in paragraph 66 below contain a directory entitled either "Google Drive" or "Google Drive Backup." Google Drive offers a "Backup and Sync" functionality allowing users of a Mac or Windows computer to back up their files to a Google Drive account.

65.     The paths listed in paragraphs 52 and 66 which contain the "Google Drive" directory have contain a directory entitled ████████████████ CHANG's Google Account username, as dictated by his email address, is ████████████.

66.     I also found files containing protected health information and personal identifying information on other portable hard drives seized from CHANG's residence that implicate a Google Drive account including the following paths:



23

███████████████████████████████

67.    As with the paths listed in paragraph 52 above, the presence of the "Google Drive" or "Google Drive Backup" folder in the paths listed in paragraph 66 above indicates that, at one point, the files listed were stored in a directory of that same name.

68.    Further inspection of these additional files revealed that the files belonged to three to four other companies that employed CHANG and used protected health information in the course of lawful business. The other companies have been contacted to verify the identity of the files.

69.    FBI consulted with one of these companies, Pharmaceutical Strategies Group ("PSG"). PSG verified the file named "PSG.zip.projects.15525.compared.xlsx" found on a portable hard drive seized from CHANG's residence belonged to it. This file contains protected health information including patient names, dates of birth, prescriptions authorized, reasons for prescribing, and prescriber IDs, among other health-related information.

70.    PSG certified that CHANG was a telework employee authorized to work with protected health information from approximately 2017-2018. PSG also stated that CHANG was not authorized to download any confidential information to any personal storage devices.  Finally, PSG's corporate offices and servers are located in Texas.

71.    Additionally, the directory "DT605_20180823" is present following the "Google Drive Backup" directory in some paths described in paragraph 52 above as well

24

as the second path in paragraph 66 above, suggesting that CHANG had a directory entitled "DT605_20180823" on his Google Drive account which contained documents with protected health information from at least two companies.

72.     That the paths containing the "Google Drive Backup" directory all contain the "DT605_20180823" directory and the paths containing the "Google Drive" directory all contain the "TrolleySquareMan" directory indicate that CHANG stored files containing sensitive information to his Google Drive account in at least two ways. These two different general paths could indicate that CHANG stored some files locally to his computer before uploading them to his Google Drive account via the Google Backup and Sync functionality, and saved other files directly to his ████████████ Google Drive account.

## INFORAMTION TO BE SEARCHED AND THINGS TO BE SEIZED

73.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

74.     The government will execute this warrant by serving the warrant on Google, Inc.  Because the warrant will be served on Google, Inc., who will then compile

25

the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*Garrett Kerley*
_____
Special Agent Garret M. Kerley
Federal Bureau of Investigation

Sworn and subscribed before me this _6th_ day of August, 2020

_____
Honorable Mary Pat Thynge
Chief United States Magistrate Judge

26

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with GOOGLE ID 760221658247 that is stored at premises owned, maintained, controlled, or operated by Google, Inc. a company headquartered at 1600 Amphitheatre Pkwy, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

I.     **Information to be disclosed by Google, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, Inc., regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Google, Inc. or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     All activity relating to Google Drive (including Docs, Sheets, and Slides), including, but not limited to, all files, folders, media, notes, lists, third-party data, and/or data uploaded and/or stored within the account, and all data associated therewith, whether created, shared, or downloaded.

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session dates, times, and durations, the date on which the account was created, the length of service, the IP address used to register the account, the IP address(es) associated with each session, account status, e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized by the user;

d.      All records relating to search terms, including Web and App activity between May 1, 2016 and June 16, 2020.

e.      All records pertaining to communications between Google, Inc. and any person regarding the account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, § 1030(a)(2)  and/or Title 42, United States Code § 1320d-6(a)(2) and involving Weih Steve CHANG since May 1, 2016, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Personal identifying information and personal health information of member doctors and patients.

(b) Victim Corporation's proprietary records for data mining and or Company employee's personnel share files.

(c) The identity of the person who created or used the user GOOGLE ID 760221658247.

(d)  Files, documents or data belonging to a corporation or entity that did not authorize transfer of its files or data.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.